Ronald J. McIntosh, Pro Se.
Reg. No. 12053-086
P.O. Box 8000
Marianna, FL 32447-8000



FILED
09 JUL 30 AM 11: 29
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD J. McINTOSH,<br><br>    Petitioner,<br><br>v.<br><br>ERIC H. HOLDER, JR., et al.,<br><br>    Respondents. | Case No. CV 09-0750 CRB (PR) |

REPLY BRIEF IN OPPOSITION
TO RESPONDENT'S MOTION TO DISMISS

by:

Ronald J. McIntosh, Pro Se.

TABLE OF CONTENTS

| Item | Page |
|---|---|
| Table of Contents | i |
| Table of Authorities | ii |
| Opening Statement | 1 |
| Discover of the Factual Predicates of the Claims was Impeded by the Respondents | 2 |
| Due Diligence | 3 |
| Cause and Prejudice | 6 |
| United States Constitutional Errors at Trial | 6 |
| Summary | 8 |
| Conclusion | 8 |

--

Certificate of Service

TABLE OF AUTHORITIES

| Item | Page |
|---|---|
| "AEDPA" Antiterrorist and Effective Death Penality Act of 1996 | 1 |
| Brady v Maryland (1963) 373 U.S. 83; 83 S.Ct. 1194; 10 L.Ed.2d 215 | 7 |
| Calderson v Thompson (1998) 523 U.S. 538; 118 S.Ct. 1489; 140 L.Ed.2d 728 | 2 |
| Cepeda v Espinoza (2008) U.S. Dist. (9th Cir.) Lexis 1876 | 8 |
| Carriger v Stewart, 132 F.3d 463 (9th Cir. 1997) | 2 |
| Ferrara v United States, 370 F.Supp.2d 351 (D.Mass. 2005) | 6 |
| Johnson v Knowles, 541 F.3d 933 (9th Cir. 2008) | 1 |
| Kyles v Whitley (1995) 514 U.S. 419; 115 S.Ct. 1555; 131 L.Ed.2d 490 | 7 |
| McCleskey v Zant (1991) 499 U.S. 467; 111 S.Ct. 1454; 113 L.Ed.2d 517 | 6 |
| Moore v Knight, 368 F.3d 936 (7th Cir. 2004) | 5 |
| Murray v Carrier (1986) 477 U.S. 478; 106 S.Ct. 2639; 91 L.Ed.2d 397 | 6 |
| Nulph v Cook, 333 F.3d 1052 (9th Cir. 2003) | 8 |
| Page v DiGuglielmo (2005) 544 U.S. 408; 125 S.Ct. 1807; 161 L.Ed.2d 669 | 2 |
| People v Duvall (1995) 9 Cal.4th 464; 37 Cal.Rptr.2d 259; 886 P.2d 1252 | 8 |
| Pirtle v Morgan, 313 F.3d 1160 (9th Cir. 2002) | 8 |
| In Robbins (1998) 18 Cal.4th 770; 77 Cal.Rptr.2d 153; 959 P.2d 311 | 8 |
| In re Swain (1949) 34 Cal.2d 300; 204 P.2d 793 | 8 |
| United States v Connolly, 341 F.3d 16 (1st Cir. 2003) | 7 |
| United States v Flemmi, 370 F.Supp.2d 351 (D.Mass. 2005) | 6 |
| United States v Flemmi, 195 F.Supp.2d 243 (D.Mass. 2001) | 6 |

Case 3:09-cv-00750-CRB   Document 11   Filed 07/30/09   Page 4 of 13

| Item | Page |
|---|---|
| United States v Salemme, 91 F.Supp.2d 141 (D.Mass. 1999) | 7 |
| United States v Zuno-Arce, 339 F.3d 886 (9th Cir. 2003) | 2 |

----------

United States Code

| | |
|---|---|
| Title 28 U.S.C. § 2244(b)(2)(B) | 2 |
| Title 28 U.S.C. § 2244(d)(2)(B) | 5 |

//
//
//

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD J. McINTOSH,<br><br>      Petitioner,<br><br>v.<br><br>ERIC H. HOLDER, JR., et al.,<br><br>      Respondents. | Case No. CV 09-0750 CRB (PR)<br><br>REPLY BRIEF IN OPPOSITION<br>TO RESPONDENT'S MOTION TO<br>DISMISS |

COMES NOW the Petitioner, Ronald J. McIntosh, Pro Se., herein after, "McIntosh", with his Reply Brief in Opposition to Respondent's Motion to Dismiss, pursuant to the Antiterrorist and Effective Death Penality Act of 1996 ("AEDPA").*

I.                       OPENING STATEMENT

McIntosh's petition for Writ of Habeas Corpus is timely filed, within the guidelines of the AEDPA.

The Ninth Circuit in Johnson v Knowles, 541 F.3d 933, 937 (9th Cir. 2008), restated the United States Supreme Court holding in Schlup v Delo (1995) 513 U.S. 298; 115 S.Ct. 851; 130 L.Ed.2d 808, that: (quoted herein)

---

\*   This court issued an order on May 27, 2009, directing the Respondents to file a Motion to Dismiss or Notice that Motion is Unwarranted within 60 days. More than 60 days have past.  The Petitioner, McIntosh, has not received anything or heard anything from the Respondents. On the side of caution, McIntosh is filing this Reply Brief to any would be motion to dismiss, so that his position maybe on the record. And would request that, if the Respondents do file a motion to dismiss, that McIntosh be allowed to amended this reply brief, if necessary.

1

> "Under Schlup, a petitioner's otherwise-barred claims (may be) considered on the merits ... if his claim of actual innocence is sufficient to bring him within the narrow class of cases ... implicating a fundamental miscarriage of justice. In order to pass through Schlup's gateway, and have an otherwise barred constitutional claim heard on the merits, a petitioner must show that, in light of all the evidence, including evidence not introduced at trial, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. A petitioner need not show that he is 'actually innocent' of the crime he was convicted of committing; instead, he must show that a court cannot have confidence in the outcome of the trial."

Also see Calderson v Thompson (1998) 523 U.S. 538; 118 S.Ct. 1489; 140 L.Ed.2d 728, Page v DiGuglielmo (2005) 544 U.S. 408; 125 S.Ct. 1807; 161 L.Ed.2d 669, Carriger v Stewart, 132 F.3d 463, 477 (9th Cir. 1997)(en Banc), United States v Zuno-Arce, 339 F.3d 886, 890 n.5 (9th Cir. 2003) and title 28 U.S.C. § 2244(b)(2)(B).

II.     DISCOVER OF THE FACTUAL PREDICATES OF
        THE CLAIMS WAS IMPEDED BY THE RESPONDENTS

McIntosh's was convicted of conspiracy to murder Ronald Ewing, and thereby the first degree murder of Ewing. The acutal murderer (shooter) was Drax Quartermain (aka Drax Quatermain, aka Russell Weston[*]). McIntosh was some 150 miles away at the time of the murder. Quartermain/Weston never testified in any proceedings involving McIntosh. David Younge (aka Ronald Raiton[*]) did testify at McIntosh's trial. Younge/Raiton's testimony was entirely made-up of hearsay statements allegedly made by Quartermain/Weston. Younge/Raiton was/is the only witness that placed McIntosh in the alleged conspiracy to murder Ewing. Both Younge/Raiton and Quartermain/

---

[*]  McIntosh was unaware of these names, Ronald Raiton and Russell Weston, at the time of trial, Learning of these names sometime after the trial.

2

Weston were in the Federal Witness Protection Program ("WITSEC") at the time of the murder of Ewing. Younge/Raiton was actively participating in WITSEC and testifying in LCN (La Cosa Nostra/ Italian Mafia) trials on the East Coast, during the time of McIntosh's trial.

At a pretrial hearing on October 5, 1990, just two months before trial, McIntosh's trial counsel was still attempting to obtain the backgrounds of Younge/Raiton and Quartermain/Weston. At this pretrial hearing, Ms. Sue Kamlet, of the United States Attorney's Office appeared and testified in court on behalf of the United States Department of Justice. Ms. Kamlet's testimony was: (quoted herein)

> "We [The United States Department of Justice] have withheld these records [as the] persons named are Federal Protected Witnesses. That would constitute an additional ground for withholding of the documents."

III.                    DUE DILIGENCE

Each time a new inmate arrived at the prison where McIntosh was being housed, McIntosh would make inquires of that inmate to see if he knew or had heard of David Younge/Ronald Raiton and/or Drax Quartermain/Russell Weston. Especially, if that inmate was from the Philadelphia area. If that inmate knew or had heared of Younge/Raiton and/or Quartermain/Weston, McIntosh would then forward that information to his private investigators.

In 1991, McIntosh obtained the services of Al Holbert, private investigator, licensed in the State of California, license number PI 10490, Sonoma County, USA. Over the next 12 years, Holbert investigated dozen of leads, in the hopes of finding something

3

about the backgrounds of Younge/Raiton and/or Quartermain/Weston. All to no avail.

McIntosh obtained the services of Gary McDaniel, private investigator, licensed in the State of Florida, license number 01226, Palm Beach County, USA, in 2003.

It seems that everywhere the investigators looked, the records were "missing", "no-record found", the file has been "deleted", the file has been "misplaced and can not be located", and finally just plan "lost". See Al Holbert and Gary McDaniel('s) affidavits.

McIntosh entered the Federal Witness Protection Program, WITSEC, in 2001, and he continued to inquire of everyone if they knew or had heard of Younge/Raiton and/or Quartermain/Weston.

In April 2006, a WITSEC inmate told McIntosh that Younge/Raiton and Quartermain/Weston worked together back in the 1970s, and that Younge/Raiton was not only in the drug business, but also in the loansharking business, and ran strong-arm extortions. That Quartermain/Weston was Younge/Raiton's strong-arm man in odd-jobs. But, this inmate refused to give McIntosh an affidavit, but he did give McIntosh some names of persons who knew both Younge/Raiton and Quartermain/Weston back in the 1970s. This was the first time McIntosh became aware of Younge/Raiton and Quartermain/Weston relationship prior to 1982. 1982 was the year that Younge/Raiton testified to, as being the first time he had ever met Quartermain/Weston. Obviously, Younge/Raiton was attempting to conceal their (Younge/Raiton and Quartermain/Weston) past crimial relationship.

4

Title 28 U.S.C. § 2244(d)(2)(B) states that the: ... limitations period begins to run upon removal of unconstitutional impediment to discover of constitutional violations or upon exercise of due diligence in discovering new facts.

It was not until McIntosh was told, in April 2006, that he had reason to suspect the magnitude of the evidence that had been concealed by the Respondents. And it wasn't until McIntosh obtained the affidavits of George Marorano, October 19, 2006, and Carl Jackson, January 12, 2007, that McIntosh has specific, concrete information regarding Younge/Raiton and Quartermain/Weston past criminal relationship, and thereby Younge/Raiton's perjury. The Circuit Courts have held that the one-year time limitation begins to run with the discover of the factual predicate, the date on which the affidavit was signed. See Moore v Knight, 368 F.3d 936, 939 (7th Cir. 2004); Souter v Jones, 395 F.3d 577, 587 (6th Cir. 2005).

On July 14, 2006, McIntosh filed his habeas action with the California State Superior Court, County of San Mateo. Some three (3) months before the signing of the first affidavit.

By the time McIntosh had obtained the affidavits of Marorano and Jackson, the private investigators, Holbert and McDaniel, had more than 4,000 hours of investigation on this case, and hundreds of leads had been followed-up-on. To restate, everywhere the investigators looked, the Respondents had concealed the records regarding Younge/Raiton and Quartermain/Weston past criminal relationship. In fact those records are still "missing". It is

5

only through the extreme due diligence of these investigators and the petitioner, that McIntosh was able to learn the truth.

IV.                     CAUSE AND PREJUDICE

The United States Supreme Court in McCleskey v Zant (1991) 499 U.S. 467; 111 S.Ct. 1454; 113 L.Ed.2d 517, stated that "for the purposes of applying the cause standard for a federal habeas corpus relief from a state criminal conviction, the cause component requires a showing of some external impediment preventing the petitioner from raising his claim earlier." In this case, that impediment was/is the Respondents themselves, the Government.

In Murray v Carrier (1986) 477 U.S. 478; 106 S.Ct. 2639; 91 L.Ed.2d 397, the United States Supreme Court said that "under the cause and prejudice requirement, a federal habeas corpus petitioner must show not merely that errors at trial created a possibility of prejudice, but that the errors at trial worked to the petitioner's actual and substantial disadvantage, infecting the trial with error of constitutional dimensions. Such a showing ... could be hardly anything other than the petitioner was denied fundamental fairness at trial."

V.         UNITED STATES CONSTITUTIONAL ERRORS AT TRIAL

Each of the sixteen (16) claims presented in McIntosh's petition for Writ of Habeas Corpus are rights guaranteed by the United States Constitution. The Government's conduct in McIntosh's case was/is a pattern similar to the Government misconduct in Ferrara v United States, 370 F.Supp.2d 351, 368 (D.Mass. 2005) Also see United States v Flemmi, 195 F.Supp.2d 243 (D.Mass. 2001);

6

United States v Salemme, 91 F.Supp.2d 141 (D.Mass. 1999); and United States v Connolly, 341 F.3d 16 (1st Cir. 2003).

McIntosh's case is very similar to Ferrara, supra. In the Ferrara, supra, case the Government knowingly allowed their WITSEC witness to commit perjury, to frame an innocence man, so that their WITSEC witness could not be impeached in the Government's prosecution of other, unrelated, LCN (La Cosa Nostra/Italian Mafia) cases.

In, at McIntosh's trial, it was Younge/Raiton, a WITSEC witness, who had Quartermain/Weston murder Ewing. See Carl Surrell affidavit I. Then the Respondent's allowed Younge/Raiton to commit perjury, and frame McIntosh, so that their WITSEC witness, Younge/Raiton would not be impeached in other, unrelated, East Coast LCN cases.

To quote the United States District Court of Massachusetts in Ferrara, supra, at 361: "This case involves an obvious and egregios violation of the government's clear constitutional duty to disclose material exculpatory evidence. See Brady v Maryland (1963) 373 U.S. 83; 83 S.Ct. 1194; 10 L.Ed.2d 215, Kyles v Whitley (1995) 514 U.S. 419; 115 S.Ct. 1555; 131 L.Ed.2d 490."

The above quote in Ferrara is equally applicable in McIntosh's case.

//
//
//

7

VI.                             SUMMARY

The California Supreme Court denied McIntosh's petition for Writ of Habeas Corpus citing: In Robbins (1998) 18 Cal.4th 770, 780; 77 Cal.Rptr.2d 153; 959 P.2d 311; In re Swain (1949) 34 Cal. 2d 300, 304; 204 P.2d 793; People v Duvall (1995) 9 Cal.4th 464, 474; 37 Cal.Rptr.2d 259; 886 P.2d 1252.

The Ninth Circuit has held by California Supreme Court citing In Robbins, supra, In re Swain, supra, and People v Duvall, supra, that: "When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo." See Cepeda v Espinoza (2008) U.S. Dist (9th Cir.) Lexis 1876; Nulph v Cook, 333 F.3d 1052, 2056 (9th Cir. 2003); Pirtle v Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

VII.                           CONCLUSION

FOR the foregoing reasons, there can be no doubt that McIntosh, the petitioner, was denied a fair trial, resulting in a fundamental miscarriage of justice, thus McIntosh's petition for Writ of Habeas Corpus should proceed and be heard on the merits of the claims therein.

                                        Respectfully submitted,

                                        *[signature]*
                                        Ronald J. McIntosh, Pro Se.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

RONALD J. McINTOSH,           )
                              )
        Petitioner,           )
                              )  Case No. CV 09-0750 CRB (PR)
v.                            )
                              )
ERIC H. HOLDER, JR., et al.,  )
                              )
        Respondents.          )
_____)

CERTIFICATE OF SERVICE

        The undersigned hereby certifies that a true copy of the foregoing, REPLY BRIEF IN OPPOSITION TO RESPONDENT'S MOTION TO DISMISS, was mailed by first class United States Mail, postage prepaid and attached thereto, this __27__ day of __July__, 2009, to the attorney for the Respondents, at the location below:

Attorney Gerenal
 State of California
455 Golden Gate Avenue
Ste 11000
San Francisco, CA 94102


                                    _R. J. McIntosh_
                                    Ronald J. McIntosh