1  KAMALA D. HARRIS
   Attorney General of California
2  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
3  PAMELA K. CRITCHFIELD
   Deputy Attorney General
4  State Bar No. 168024
    455 Golden Gate Avenue, Suite 11000
5   San Francisco, CA  94102-7004
    Telephone:  (415) 703-5952
6   Fax:  (415) 703-1234
    E-mail:  Pamela.Critchfield@doj.ca.gov
7  *Attorneys for Respondent*

8              IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12

13  **RONALD J. McINTOSH,**                     C 09-0750 CRB (PR)

14                             Petitioner,

15       v.                                     **RESPONSE TO PETITIONER'S
                                                MOTION FOR INDICATIVE RULING
16                                              BY THE DISTRICT COURT ON A
    **ERIC H. HOLDER, JR., et al,**             MOTION FOR RELIEF FROM
17                                              JUDGMENT PENDING APPEAL**
                             Respondents.
18                                              Date:        November 1, 2013
                                                Time:        10:00 a.m.
19                                              Dept:        1, 17th Floor
                                                Judge:       The Honorable Charles R.
20                                                           Breyer

21

22                          **INTRODUCTION**

23       On September 8, 2010, this Court granted respondent's motion to dismiss petitioner's

24  habeas petition as untimely and denied a certificate of appealability (COA).  CR 22.  A two-judge

25  panel of the Ninth Circuit subsequently granted a COA with respect to the following issues:

26       (1) whether petitioner is entitled to an equitable exception to the AEDPA's[1]
         statute of limitations because he has made a credible showing of actual innocence;

27  _____

28       [1] Antiterrorism and Effective Death Penalty Act of 1996.

                                      1

(2) whether, in relation to petitioner's claims concerning witness David Younge, petitioner is entitled to a delayed commencement of AEDPA's statute of limitations period based on the discovery of new evidence regarding Younge, and if so, whether petitioner is entitled to habeas relief on the merits of these claims; and

(3) whether, in relation to petitioner's claims concerning potential defense witness Jim Green, petitioner is entitled to a delayed commencement of the statute of limitations period based on the discovery of new evidence regarding Green.

Petitioner filed a motion in the Ninth Circuit to remand the case to this Court in order to expand the record and consider all the claims addressed in this Court's order dismissing the petition as untimely. The Ninth Circuit denied the motion without prejudice to filing a renewed motion accompanied by an indication that the district court is willing to entertain a Federal Rule of Civil Procedure 60(b) motion pursuant to Fed. R. App. P. 12.1(b) ("If the district court states that it would grant the motion or that the motion raises a substantial issue, the court of appeals may remand for further proceedings but retains jurisdiction unless it expressly dismisses the appeal."). Petitioner subsequently filed the instant motion for relief from judgment pursuant to Fed. R. Civ. Pro. 60(b) and 62.1.

As explained below, respondent does not oppose a limited remand to this Court for its consideration of whether or not petitioner is entitled to have the time-barred claims in his federal habeas petition considered pursuant to the equitable exception of actual innocence as defined in *Schlup v. Delo*, 513 U.S. 298 (1995). Respondent submits further, as explained below, that petitioner's corollary argument that various individual claims in his habeas petition are subject to statutory delayed commencement of the AEDPA limitations period is foreclosed by *Walker v. Martin*, 131 S. Ct. 1120, 1124 (2011), because the claims are procedurally barred. Petitioner can only overcome that bar if he likewise meets his burden to show actual innocence. Petitioner is not entitled to delayed commencement of the statute of limitations for any claims in any event and, thus, a remand to this Court for consideration of those claims is unnecessary.

///

///

///

///

2

**ARGUMENT**

**I.     RESPONDENT DOES NOT OPPOSE A LIMITED REMAND FOR CONSIDERATION OF THE ACTUAL INNOCENCE EXCEPTION ISSUE**

In the order granting respondent's renewed motion to dismiss petitioner's habeas petition, this Court relied on the then-controlling Ninth Circuit panel decision in *Lee v. Lampert*, 610 F.3d 1125 (9th Cir. 2010), which held that there was no actual innocence exception to override AEDPA's statute of limitations. *Id*. at 1133-1134. After petitioner filed a notice of appeal but before a COA was granted, an en banc panel of the Ninth Circuit determined that a credible showing of actual innocence under *Schlup v. Delo*, 513 U.S. 298 (1995) excuses the statute of limitations period under AEDPA.[2] *Lee v. Lampert*, 653 F.3d 929, 937 (9th Cir. 2011) (en banc). The Ninth Circuit later granted a COA in this case on "whether petitioner is entitled to an equitable exception to AEDPA's statute of limitations because he has made a credible showing of actual innocence."

To pass through the *Schlup* gateway, petitioner must show *reliable* evidence of his innocence that was not, and could not have been, presented at trial. *Schlup* at 324-28. This is a high threshold that is rarely met. *Id*. *Schlup* pointed out three types of evidence that would pass the threshold of reliability: exculpatory scientific evidence, trustworthy eyewitness accounts and critical physical evidence. *Id*. As Judge Kozinski stated in his concurrence in *Lee*, "[b]y enumerating the categories of evidence that could prove innocence, the Supreme Court made clear that less reliable kinds of evidence cannot support an actual innocence claim. The Court

---

[2] The Supreme Court subsequently addressed the issue in *McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013), holding that the AEDPA's statute of limitations can be overcome by a credible showing of actual innocence. The Court further held that a court may consider the timing of the submission and the likely credibility of a petitioner's affiants in determining the probable reliability of evidence of actual innocence. *Id*. at 1935. Perkins' evidence of actual innocence consisted of three affidavits each pointing to the prosecution's star witness, who had been with Perkins the night of the murder, as the murderer. *Id*. at 1929-1930. The district court had determined that even assuming the affidavits Perkins submitted were newly discovered evidence, the affidavits were "hardly adequate to show that, had [the evidence] been presented at trial, no reasonable juror would have convicted Perkins." *Id*. at 1936. The Supreme Court ruled that the district court's appraisal of Perkins' evidence was dispositive. *Id*. Thus, while the Court agreed that an actual innocence exception to the AEDPA statute of limitations existed, it determined that the evidence submitted in that case was inadequate to show actual innocence.

1   certainly did not hold that a petitioner may invoke *Schlup* whenever he wants a trial do-over."

2   653 F.3d at 945-46.[3]  Further, in order to pass through the *Schlup* gateway, petitioner must show

3   that it is more likely than not that *no* reasonable juror would have convicted him in the light of the

4   new evidence.  *Schlup*, 513 U.S. at 327 (emphasis added).  In other words, petitioner must

5   persuade the court that every juror would have voted to acquit him.  *Lee*, 653 F.3d at 946, citing

6   *Schlup*, 513 U.S. at 327.[4]

7        To briefly clarify, the new evidence petitioner has submitted in support of actual innocence

8   to excuse his untimely filing consists of a declaration from Gary McDaniel, a private investigator

9   petitioner hired in 2003 (Petition, exhibit C)[5]; a declaration from Carl Jackson, a federal prisoner

10  who claims to have known Younge and Quartermain in the 1970's (Petition, exhibit A)[6]; a

11  declaration from George Martorano, a federal prisoner who also claims to have known Younge

12  and  Quartermain in the 1970's (Petition, exhibit B)[7]; two declarations from Carl Surrell, dated

13  1996 and 2006, a former federal prisoner who claims to have done time with Younge and

14

15        [3] In *Lee*, petitioner's evidence submitted in support of his actual innocence claim
    consisted of an expert opinion concerning the reliability of some of the trial testimony; a police
16  report about petitioner's friend who had pled guilty to molesting the same victim during the same
    time-frame and at the same location as in petitioner's case; and other evidence about petitioner's
17  former sister-in-law in whose home the molestation took place as well as her ex-husband who
    was petitioner's brother. *Id.* at 943.  The *Lee* court determined that none of the above evidence
18  was sufficient to show that no reasonable juror would have convicted Lee in the light of the new
    evidence. *Id.*  Indeed, the court explained that the jury would reasonably have rejected all the
    alleged new evidence.
19        [4] In *Schlup*, the new evidence submitted by petitioner included affidavits by three black
    inmates who witnessed the racially motivated crime and who attested to the innocence of the
20  white petitioner, an affidavit of an inmate who provided specific eyewitness evidence that
    corroborated petitioner's defense at trial, and an affidavit of a former prison guard who provided
21  first-hand evidence that supported petitioner's defense at trial.  The Supreme Court noted that
    these new facts raised sufficient doubt about Schlup's guilt to undermine confidence in the result
22  of the trial and it remanded the case to the lower courts for further proceedings. 513 U.S. at 311-
    312, 331-332.
23        [5] McDaniel's thirty-six page declaration detailed his work in tracking down various leads
    to connect Younge (whose legal name he claims is Ronald Raiton) and Quartermain (whose legal
24  name he claims is Russell Weston), and stated that he located and spoke by phone with
    prosecution witness Deborah Chandler.  McDaniel does not provide any exculpatory evidence of
25  actual innocence on petitioner's behalf.
          [6] Carl Jackson declared that he knew Younge and Quartermain (under the names Raiton
26  and Weston) in the 1970's and that Quartermain did odd jobs for Younge and others.
          [7] George Martorano declared that Quartermain (under the name Weston) worked with and
27  for Younge (under the name Raiton) in the 1970's.  Martorano also stated that Carl Jackson told
    him that Younge "killed a guy in California."
28

4

1   Quartermain in Pleasanton in 1983 (Petition, exhibits D and L)[8]; a declaration from Jim Green, a

2   former federal prisoner who claims to have served time with petitioner and who was a potential

3   defense witness at trial (Petition, exhibit H)[9]; and two declarations from petitioner (Petition,

4   exhibits E and O).[10]

5         The declarations submitted by petitioner are neither exculpatory scientific evidence,

6   trustworthy eyewitness accounts of the crime or events leading up to the crime, or critical

7   physical evidence.  *See Schlup*, 513 U.S. at 324-328.  Further, nothing in these declarations makes

8   it more likely than not that *no* reasonable juror would have convicted petitioner in light of what

9   was said.  *Id*.  Significantly, the evidence of guilt at trial was strong.  In addition to Younge and

10  Chandler's eyewitness testimony, there was "abundant" evidence, even aside from Younge's

11  statements, proving the existence of a conspiracy to kill the victim.  *See* Respondent's Renewed

12  Motion to Dismiss Habeas Petition as Untimely, exh. 1 at 1-4, exh. 2 at 2-24; Respondent's Reply

13  to Petitioner's Opposition to Renewed Motion to Dismiss, exh. 3 at 1-11.  Moreover, Younge was

14  thoroughly cross-examined and both the prosecutor and defense counsel highlighted the

15  credibility issues during closing.

16        The central crux of petitioner's claim is that the new evidence demonstrates that, at most,

17  Younge lied about when he met and began associating with Quartermain, and that Younge and

18  Quartermain had more than an "arms-length," "wary" relationship as allegedly portrayed by the

19  prosecution at trial. According to petitioner, if the jury had known the true facts about when

20          [8] Two declarations were submitted from Carl Surrell, one dated November 4, 1996, stating

21  that he met "Drex" Quartermain in 1983 at the Federal prison in Pleasanton.  Surrell stated that he "ran in to" Quartermain in 1986 and Quartermain told Surrell that he shot a guy and put the

22  "squeeze on the gold guys" for a payment.  Surrell stated that Quartermain told him it was Younge's idea to shoot the guy so they could blackmail the gold guys.  In the other declaration,

23  dated October 8, 2006, Surrell stated that he met Younge and Quartermain in the federal prison in Pleasanton and that they seemed to have had a prior relationship.

24          [9] Green stated that he was approached by two San Mateo County deputies in 1988 who were investigating a murder.  When Green told the deputies that petitioner had stayed at his house

25  on April 25, 1984, they "became very defensive" and told him that "they did not like what [he] had to say and encouraged [him] to think twice before testifying."  The deputies said "We don't

26  care what you have to say, but if you show up at [petitioner's] trial, you could have really serious problems."  Green stated that petitioner phoned him sometime after his trial and asked why he did

27  not show up and testify and he would not discuss it at that time.
            [10] Petitioner submits two declarations, dated July and August 2006, which detail when he

28  discovered the information he claims shows that he is actually innocent of the murder.

1  Younge and Quartermain met and the true nature of their relationship which was based on their

2  criminal activity during the 1970's, the jury would have been more likely to believe that Younge

3  and Quartermain were partners in the murder and Younge was only trying to implicate petitioner

4  in order to divert attention from himself.  *See* Petitioner's FRCP Rule 60(b) and Rule 62.1 Motion

5  ("Pet's Mtn") at 3.  Setting aside the speculative nature of petitioner's theory as well as the total

6  lack of evidence at trial to support such a theory, the "new" evidence[11] submitted by petitioner

7  and his argument about the evidence amounts to nothing more than a slightly different defense

8  theory of impeachment that petitioner, in hindsight, would have preferred his attorney presented

9  at trial.[12]  However, that is not good enough to demonstrate that it is more likely than not that

10  every juror would have voted to acquit him.  Petitioner is not entitled to a do-over of his trial just

11  because he has an idea about a different defense that could have been presented.  As in *Lee*, "[b]y

12  no stretch of the imagination does [petitioner] present a colorable claim of actual innocence."  *Id*.

13  at 945 (Kozinski, J., concurring); *see also Larsen v. Soto*, 2013 WL 5066813, *2 (9th Cir. 2013)

14  (actual innocence exception allowed when petitioner submitted declarations from eyewitnesses

15  who claimed petitioner was not the person who committed the crime).

16      Because this Court has not yet decided whether or not petitioner has made a credible

17  showing of actual innocence, respondent does not oppose this Court indicating to the Ninth

18  Circuit that petitioner's motion raises a substantial issue pursuant to Fed. R. App. Pro. 12.1(b).

19  Once the Ninth Circuit has issued a limited remand, respondent requests that this Court allow the

20  parties to fully brief the issue of whether petitioner has made a credible showing of actual

21  _____

22  [11] It is highly questionable whether petitioner's "new" evidence could not have been
discovered at the time of trial.  Petitioner claims that he was unable to hire the private

23  investigator, Gary McDaniel, until 2003, and that is the reason why he did not discover this so-
called new evidence until 2006.  But petitioner does not explain why he waited thirteen years

24  after his trial to hire someone to investigate his case.
    [12] Petitioner points to evidence that may or may not be in the state court record and claims

25  that it will demonstrate how he has met the *Schlup* standard of actual innocence.  Pet's Mtn at 11-
13.  He also argues that, in any event, he has "raised significant issues about his actual

26  innocence."  *Id*.  But the *Schlup* gateway demands that a petitioner produce reliable evidence of
his innocence that was not, and could not have been, presented at trial *and* show that it is more

27  likely than not that no reasonable juror would have convicted him in the light of the new
evidence. *Schlup*, 513 U.S. at 327.  Petitioner's attempt to seek a remand so that he can use the

28  state court trial record to bolster his so-called evidence of actual innocence is unavailing.

innocence as required under *Schlup v. Delo*.[13]  Respondent submits that it is not necessary at this point for this Court to expand the record with the state court trial record because the evidence of actual innocence petitioner has submitted is so inadequate and this Court already has before it the unpublished opinion of the California Court of Appeal affirming petitioner's conviction, respondent's brief on direct appeal, respondent's opposition to petitioner's habeas petition filed in the California Court of Appeal, and the order of the San Mateo County Superior Court denying petitioner's petition on the merits.  However, if this Court determines that the state court record is necessary in order to make that decision, respondent will provide that record.

## II.   PETITIONER'S HABEAS CLAIMS CONCERNING PROSECUTION WITNESS YOUNGE AND THE DECLARATION OF GREEN ARE PROCEDURALLY DEFAULTED

The other two claims set forth in the COA, whether petitioner is entitled to delayed commencement of the statute of limitations under 28 U.S.C. § 2244(d)(1)(D) on the claims dealing with Younge and the claims dealing with potential witness Jim Green, are procedurally defaulted.

Both the California Court of Appeal and the California Supreme Court denied petitioner's state habeas petitions as untimely pursuant to *In re Robbins*, 18 Cal.4th 770, 780 (1998) and *In re Clark*, 5 Cal.4th 750, 782-799 (1993).  As such the federal petition is defaulted under the Supreme Court's decision in *Walker v. Martin*, 131 S. Ct. at 1120.  Petitioner can overcome the procedural default by a showing of cause and prejudice or a miscarriage of justice, which is a showing of actual innocence.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  Thus, all the claims in petitioner's habeas petition, including the claims dealing with Younge and Green, are defaulted *unless* petitioner is able to prove that he is entitled to the equitable exception of actual innocence.

---

[13] Petitioner styles his motion as a motion for relief from judgment under Fed. R. Civ. Pro. 60(b) and 62.1.  While he may ultimately ask this Court to rule on a motion for relief from judgment, the Ninth Circuit has only directed him to seek an indication, pursuant to Fed. R. App. Pro. 12.1, of whether or not this Court would entertain such a motion in the future.  Thus, petitioner's motion for relief from judgment is premature and respondent does not attempt to respond fully to the merits of the Rule 60(b) motion at this time.

7

1    When respondent moved in 2009 and 2010 to dismiss petitioner's habeas petition as

2    untimely, the Supreme Court had not yet decided *Walker v. Martin*.  Respondent did not raise the

3    procedural default issue at the time because binding Ninth Circuit precedent had rejected that

4    doctrine.  *See Townsend v. Knowles*, 562 F.3d 1200 (9th Cir. 2009).  After *Walker*, the Ninth

5    Circuit has recognized that the procedural default doctrine would apply even where the state had

6    previously relied only on the statute of limitations.  *Alvarez v. Wong*, 425 Fed.Appx. 652 (9th Cir.

7    2011); *see Rodriguez v. Adams*, 2012 U.S. Dist. LEXIS 23381, *2-5 (N.D. Cal. 2012) (granting

8    state's motion to alter or amend judgment granting writ, because the Supreme Court had decided

9    *Walker v. Martin* after the case was briefed and the claim must now be dismissed as procedurally

10   defaulted).  Thus, the *only* decision that needs to be decided by this Court on remand is whether

11   or not petitioner has demonstrated that his time-barred and defaulted federal habeas petition may

12   be considered pursuant to the equitable exception of actual innocence as defined in *Schlup v.*

13   *Delo*.

14        Accordingly, respondent respectfully requests that this Court indicate, pursuant to Federal

15   Rule of Appellate Procedure 12.1, that it will consider petitioner's motion for relief for judgment

16   and then set a briefing schedule for the parties on a motion under Federal Rule of Civil Procedure

17   60(b).[14]

18   Dated:  September 24, 2013              Respectfully Submitted,

19                                          KAMALA D. HARRIS
                                            Attorney General of California
20                                          PEGGY S. RUFFRA
                                            Supervising Deputy Attorney General
21

22
                                           /S/PAMELA K. CRITCHFIELD
23                                          PAMELA K. CRITCHFIELD
                                            Deputy Attorney General
24                                          *Attorneys for Respondent*

25   SF2009202082
     40767717.doc
26   _____

27        [14] Petitioner has requested oral argument on his motion.  Respondent submits that the
     motion for an indicative ruling can be decided on the pleadings and that oral argument is not
28   necessary.  *See* L.R. 7-1(b).

## CERTIFICATE OF SERVICE

Case Name:   **Ronald J. McIntosh vs. Eric H.**          No.   **C 09-0750 CRB (PR)**
             **Holder, Jr., et al**

I hereby certify that on <u>September 24, 2013</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**RESPONSE TO PETITIONER'S MOTION FOR INDICATIVE RULING BY THE DISTRICT COURT ON A MOTION FOR RELIEF FROM JUDGMENT PENDING APPEAL**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>September 24, 2013</u>, at San Diego, California.

_____
             A. Brooks
             Declarant

_____
                         Signature

70758797.doc