Pages 1 - 20

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CHARLES R. BREYER

RONALD J. MCINTOSH,                )
                                   )
            Petitioner,            )
                                   )
  vs.                              ) No. C 09-750 CRB
                                   )
ERIC H. HOLDER, JR., et al.,       )
                                   ) San Francisco, California
            Respondent.            ) Friday
_____) April 25, 2014

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**For Petitioner**:      Boersch Shapiro LLP
                         235 Montgomery Street, Suite 835
                         San Francisco, California 94104
                  **By:  David William Shapiro, Esquire**

**For Respondent:**      CA State Attorney General's Office
                         455 Golden Gate Avenue, Suite 11000
                         San Francisco, CA 94102-7004
                  **By:  Pamela K. Critchfield,
                         Deputy Attorney General**

**Also Present:**        Melinda L. Haag
                         United States Attorney
                         450 Golden Gate Avenue, 11th Floor
                         San Francisco, California  94102
                  **By:  Wai Shun Wilson Leung, AUSA**

**Reported By:**   *Katherine Powell Sullivan, CSR #5812, RMR, CRR*
                   *Official Reporter - U.S. District Court*

```
 1                    P R O C E E D I N G S
 2  APRIL 25, 2014                                    10:28 A.M.
 3          THE CLERK:  Calling case C 09-750, Ronald McIntosh
 4  versus Eric Holder.
 5      Appearances, Counsel.
 6          MR. SHAPIRO:  Good morning, Your Honor.  David Shapiro
 7  for Mr. McIntosh.
 8          MS. CRITCHFIELD:  Good morning.  Pam Critchfield for
 9  the State Attorney General's Office.
10          MR. LEUNG:  Wilson Leung for the United States of
11  America, interested third party.
12          THE COURT:  Right.  And when last we were together you
13  were filing an appearance.
14          MR. LEUNG:  I filed one yesterday, Your Honor.
15          THE COURT:  Okay.  So you've appeared in the case.
16          MR. SHAPIRO:  Your Honor, may I --
17          THE COURT:  Mr. Shapiro.
18          MR. SHAPIRO:  I did get that filing last night.  And I
19  have an objection to it.
20          THE COURT:  I haven't even seen it.  Does anybody have
21  a copy of it?
22          MR. SHAPIRO:  I have a copy.
23          THE COURT:  Okay.
24          MR. SHAPIRO:  My issue with the -- I'm not trying to
25  exclude Mr. Leung from participating, but it sort of skirts two
```

1  separate statuses.  One is appearing for a party or moving to
2  intervene on behalf of a third party.  He's done neither one in
3  that notice.
4     And what we talked about last time was that he was going
5  to file a motion to intervene, which he did not do.  He just
6  filed this.
7     So if he's actually appearing on behalf of the Department
8  of Justice, you know, Eric Holder, I don't have an objection to
9  that.  But I don't think that that document --
10         **THE COURT:**  Well, who's the third party that you're
11  appearing --
12         **MR. LEUNG:**  It's the United States of America because
13  we aren't really a party to the underlying controversy.
14     However, we have received a discovery order which compels
15  us to provide certain information.  And, as a result, that's
16  the extent of our interest in this case, Your Honor.
17         **THE COURT:**  Well, when you say -- aren't the parties
18  in the case -- isn't Mr. Holder a party in the case?
19         **MR. SHAPIRO:**  He is.  Mr. McIntosh is in federal
20  custody because he is a protected --
21         **THE COURT:**  I'm not saying whether he's properly in.
22  I'm just asking, he was named as a party, wasn't he?
23         **MR. SHAPIRO:**  That's correct.
24         **THE COURT:**  And you're appearing on his behalf.  So I
25  don't understand why he's, quote, an interested third party.

1  He's a party in the litigation.  Whether he's properly in it or
2  not, that's another issue.
3          I have that every day.  Every day people are sued and they
4  ought not to be sued.  But somebody doesn't come in and say,
5  I'm here for an interested third party who's, by the way, the
6  defendant.
7          I mean, really?  Is that right?
8          Mr. Leung, is that right?
9          I'm just trying to figure out what's going on.  I know
10 what's going on is we're getting months and months and months
11 of these things, of litigation in the case.  And I'm trying
12 to -- I'm trying to get a handle on it.
13         But be that as it may, I don't know that it's helpful to
14 say, I'm here on behalf of the defendant who, by the way, is an
15 interested third party.  I've never heard that before.
16         Is that what the Justice Department does when they're
17 sued?
18             **MR. LEUNG:**  At the end of the day, Your Honor, the
19 relief will affect the state sentence.  And at this point the
20 petitioner's contact with the federal government is only
21 because of -- may I have a moment to confer with counsel?
22         (Counsel confer off the record.)
23             **MR. SHAPIRO:**  He is in federal custody because he's a
24 protected witness.
25             **MR. LEUNG:**  But serving a state sentence, Your Honor.

1  I would be happy to appear as a party in this case subject to
2  any further --
3        **THE COURT:**  And I don't think -- that's fine.  I'll
4  accept that as a general appearance on behalf of the attorney
5  general.
6      However, I also think that while you may have a good
7  argument, good legal argument that maybe you shouldn't even be
8  in this litigation, we might put that on the side for a moment
9  because, as you candidly have stated, and I think it's helpful,
10 that this litigation has -- is having some impact on federal
11 interests and, therefore, it makes sense for the attorney
12 general, in some form or another, to address some of these
13 issues.
14       **MR. LEUNG:**  Certainly, Your Honor.
15       **THE COURT:**  That's useful.  So I'm overruling -- well,
16 now he makes a general appearance.  That probably was your
17 objection.  Now that's taken care of.
18     And your proceeding in this case does not constitute a
19 waiver or acceptance or acknowledgment that the attorney
20 general is a proper party.
21       **MR. LEUNG:**  Thank you, Your Honor.
22       **THE COURT:**  Okay.  All right.  So now we've taken care
23 of that issue.
24     So let's go to the next issue, which is the substance of
25 what we're all talking about, at least procedurally with

1  respect to discovery.
2      And going through the papers, it appeared to me that --
3  that this is not all that complicated in the sense that the
4  petitioner has sought a number of documents.  Some documents
5  have been produced.
6      It's unclear, in my mind, whether certain documents were
7  withheld.
8      Putting that aside, the petitioner argues that the
9  production is not only incomplete, in that there are things
10 that perhaps were withheld, it's inadequate in terms of the
11 representations made by the producer of the documents as to
12 whether other documents exist and as to the searches and as to
13 the categories.  And so he complains about that.
14     As to that, it seemed to me that we can cut through a lot
15 of this in the following way:
16     First, if documents have been withheld, they ought to be
17 produced -- in other words, they were called for by the
18 subpoena, but they were withheld for whatever reason the
19 withholder withheld them, they ought to be produced under seal
20 with a declaration as to why they are being withheld, to the
21 Court.  Okay.  And the Court would make some determination as
22 to the propriety of withholding the documents.
23     Number two, I don't know that other than a certification
24 of the producer of the documents that these are the
25 documents -- there are no further documents.  For example,

1  counsel has said, look, it's unlikely that this is a complete
2  file; it doesn't contain any *Brady* material; doesn't contain
3  any witness notes; dah dah dah dah dah dah; all of which I
4  would expect to find in a file.
5        The answer to that is let the producer of the file certify
6  that this is all that's in the file.
7        I really am less inclined, at this point, to permit
8  petitioner to conduct any depositions or, really, any further
9  inquiry as to where are these documents that may not exist or
10 may exist.
11       Because it seems to me that we -- we should start from the
12 point of view of:  What do we have and what does it show?  And
13 what's being withheld?  And would it be useful to show
14 something that petitioner wants to show?
15       And then I think I have to take a look at all of that and
16 then make some determination as to whether petitioner has been
17 accorded due process with respect to his claim.
18       It doesn't seem to me, since the standard -- maybe we
19 don't agree, but the standard is a very high standard to set
20 this aside.  So I'm trying to figure out, is there a "there"
21 there?
22       There are some allegations.  And what does the evidence
23 show that is produced with respect to it?
24       Now, I'm sure Mr. Shapiro will argue, well, that's an
25 inadequate search and it's an inadequate production.

1   And the answer is I don't know whether it is or not.  But
2  I don't want to simply operate on the theory that the discovery
3  would be unlimited.
4       It goes back years.  It involves some sensitivity with
5  respect to witness protection programs, and so forth, that may
6  end up a complete dry well.  And especially in light of the
7  standards.
8       So I think we -- I think now we've got everybody in this
9  game, we have the state, we have the federal government.  You
10 know, declarations have to be filed.  They are going to be
11 treated seriously.
12      And I think that in the declarations there ought to be
13 some statements as to the scope of the search, what this person
14 looked at in order to determine whether documents were
15 produced.  And I think we ought to take it from there.
16      Now, that's not what the petitioner wants, but I've got to
17 try to get some control over this litigation before it spins
18 completely out of control.
19          **MS. CRITCHFIELD:**  Should I then -- I can have the
20 district attorney who produced these files sign or file a
21 declaration.  Is that what you're --
22          **THE COURT:**  Yes.
23          **MS. CRITCHFIELD:**  Okay.
24          **THE COURT:**  I think that's right.
25          **MS. CRITCHFIELD:**  Okay.

1          **THE COURT:**  I think that's right.  I don't know, are
2   you of the opinion -- and you may or may not be able to answer
3   this question -- that any documents were withheld?
4          **MS. CRITCHFIELD:**  I'm of the opinion that no documents
5   were withheld.
6          **THE COURT:**  But you have to satisfy yourself.
7          **MS. CRITCHFIELD:**  Right.  That has to be verified.
8          **THE COURT:**  Now, Mr. Shapiro.
9          **MR. SHAPIRO:**  Thank you, Your Honor.
10       I agree with Ms. Critchfield that probably the D.A. called
11  forth its documents, boxes of documents, and copied them.
12  Okay.
13       And I agree with Your Honor that a certification
14  declaration by the federal government about what it did, what
15  it withheld, and a production to you, for example, of the
16  witness security applications of the two men in question, the
17  two witnesses in question, I think that would go a long way to
18  at least getting to the point of resolving my issue.
19       But I think there's one aspect of this, because I agree
20  with Ms. Critchfield, that there's probably nothing other than
21  what's in those boxes left, that I think we should be able to
22  take a deposition about, and that's the deposition of the
23  prosecutor, Mr. Murray.
24       Because either things were thrown away -- and I'm not
25  suggesting they were thrown away in bad faith or good faith or

1   whatever.  Either they were thrown away or they never existed.
2   But if they never existed there are things in his head.  Who
3   did they talk to about the issues that we've raised?  What does
4   he know?  What does he remember?
5       And I don't think there's any way to resolve that with,
6   for example, a declaration from Mr. Murray, without me being
7   able to ask him questions.
8       **MS. CRITCHFIELD:**  The declaration that I was referring
9   to would be -- would have been from Ms. Karen Guidotti, who is
10  the person -- Mr. Murray is retired, so he's no longer with the
11  San Mateo County District Attorney's Office.
12      So the person who retrieved the files and sent them on is
13  a woman named Karen Guidotti, who is the assistant district
14  attorney in San Mateo.
15      **THE COURT:**  But Mr. Shapiro's point is that's a
16  for-sure argument, from his point of view, because he's saying
17  that there aren't things in the -- in the documents that you
18  would normally expect in a trial lawyer's file.  And so either
19  one of two things happened.  Either -- well, maybe they never
20  existed, but he says it's improbable that something like
21  witness interview notes and so forth don't exist.  So they
22  either -- or never existed.
23      So he's saying maybe they were thrown out, which is, I
24  think, the habit and custom of a lot of prosecutors.  At least
25  it was mine when we sort of finished with the case.  I didn't

1  take every scrap of paper that was -- that I used in trial, and
2  bound it all up and put it in the file.  I mean, I went through
3  and I threw out all sorts of things, trial notes and so forth.
4  Maybe I did something wrong.  I don't know.  But I think that's
5  what's done by trial lawyers.  You go through this mess of, you
6  know, what we call fugitive thoughts that occur during the
7  course of a trial, and you just sort of clean up the file and
8  send it off to the file room.
9       You know, it's not -- I guess there are cleanups and
10 cleanups.  But the cleanup that I think most trial lawyers go
11 through is just sort of putting things in some order and
12 sending it off.
13      I don't know whether they include their witness -- you
14 know, the outline of what they're going to ask particular
15 witnesses or not.  I don't think I ever saved any of that.  I
16 just didn't see a purpose.
17      Nevertheless, if the answer is, you know, there may have
18 been other notes, and so forth, taken during the course of a
19 witness interview or a trial, witness prep or a trial, I don't
20 have those anymore because I throw them away or I threw them
21 away, and then Mr. Shapiro says:  Yes, but what did you know?
22 I want to go back and find out, what did you know?  Since I
23 can't go off the documents, since they don't exist now, what
24 did you know?
25      And, you know, I don't know that some lawyer should be

1  deposed, necessarily, on what did he know -- how many years ago
2  was it?
3          **MS. CRITCHFIELD:**  24.
4          **THE COURT:**  -- 24 years ago in a case, at the time
5  that he tried the case, unless there's some evidence,
6  independent of his recollection, that he knew something that
7  should have been disclosed.
8       And the question is:  What evidence is there that he knew
9  something that should be disclosed?  What evidence is there
10 that he knew it?  I don't know.
11         **MR. SHAPIRO:**  I think there is evidence, Your Honor.
12      First of all, this was a -- this was a big case.  This
13 wasn't just a run-of-the-mill case.  This was a case that got a
14 tremendous amount of publicity.
15      For example, on one of the CDs I received from the D.A.'s
16 office -- I think it's named "motions" or one of the files is
17 named "motions," there are about a thousand pages, of which
18 about 600 are the defense lawyer's motion to change venue
19 because of all the publicity surrounding the case.  So this was
20 not an insignificant case.
21       And I tried a huge mafia murder case in 1992, and I
22 actually do still have all my notes.  But my ego is probably
23 too inflated over that one.
24      And I will tell you I remember a tremendous amount because
25 I lived that case.

1       So I expect Mr. Murray lived this case.  Maybe he
2  prosecuted hundreds of homicide cases.  I don't know.  But the
3  fact is that this is a specific question, and there is good
4  reason to believe that the FBI was in contact with the police
5  department and with Mr. Murray about Ronald Raiton.  And the
6  questions I have would simply be directed at those issues.
7       And he can say, "I don't remember," if that's his honest
8  answer.
9       And I think I should be able to have at least that ability
10 to try.  I'm not asking to take, you know, a typical civil
11 deposition that's going to go on and on and on.
12      I have focused points that I think I ought to be able to
13 ask Mr. Murray.
14         **THE COURT:**  Well, maybe there's a way to cut through
15 this.  Maybe the way to cut through it is for you to propound a
16 set of interrogatories, very, very limited; give them to
17 counsel, and counsel can discuss them with Mr. Murray.
18      Is that his name?
19         **MS. CRITCHFIELD:**  If we can find him.
20         **THE COURT:**  See whether he is able to respond to it.
21 I mean, maybe that will just get through all of this.
22      This is constant back and forth.  You know, it's just --
23 it's just endless.
24      Now, I can understand your position of saying, you know,
25 this happened 24 years ago, we shouldn't pull in prosecutors on

```
 1  somewhat of a speculative nature and ask -- you know, ask them
 2  these questions.
 3       However, if the answer is "No" or "I have no
 4  recollection," that goes a long way in sort of directing the
 5  litigation.
 6       I don't know.  I'm just trying to figure out a way not
 7  to -- I'm trying to figure out a way to get to the end before
 8  the end is so taxing.
 9       Is that something you would consider?
10           MS. CRITCHFIELD:  I --
11           THE COURT:  Maybe you're the sort of person who says,
12  I want to see what the questions are.
13           MS. CRITCHFIELD:  I don't have a problem or we would
14  not, the state would not have a problem asking Mr. Murray to
15  answer those questions.
16       Mr. Murray is retired.  And I don't know that he's in
17  contact with anyone in my office.  I certainly can call --
18           THE COURT:  CalPERS will give you his --
19           MS. CRITCHFIELD:  Will know where he is.
20           THE COURT:  My guess is he's in contact with CalPERS.
21           MR. SHAPIRO:  That's right.
22           THE COURT:  At least I would be.
23           MR. SHAPIRO:  He may still be registered.  I didn't
24  look on the California Bar.
25           THE COURT:  Why don't you do that.  Why don't you do
```

```
 1   that --
 2           MS. CRITCHFIELD:  You mean try to locate him?
 3           THE COURT:  Yeah.
 4       Why don't you prepare a set of questions.
 5       I don't want to see a set of questions like I've seen sets
 6   of questions.  In other words, just get to the point.  Not,
 7   "Tell everything you know" and dah dah dah dah dah dah dah.
 8   That sort of thing.  It ought to be very, very focused, direct
 9   on the issue.
10       And you get the questions.  He can answer them any way he
11   wants to answer them.
12           MS. CRITCHFIELD:  Okay.
13           THE COURT:  But if you can do it in a declaration and
14   so forth, it may be easier for him to do it that way.
15           MS. CRITCHFIELD:  Oh, okay.  Rather than putting an
16   individual answer to each one of the questions?
17           THE COURT:  Well, any way you want to do that.
18           MS. CRITCHFIELD:  Okay.
19           MR. SHAPIRO:  I may ask then, also, to interview him.
20   I'll ask him whether he would be willing to be interviewed.
21           THE COURT:  No.  No, I'm not going to do that right
22   now.  I'm going to see if we can deal with it otherwise.
23   Otherwise, it's just -- my guess is he will say yes.  May say
24   yes or no.  Doesn't make any difference at this point.  Okay.
25           MS. CRITCHFIELD:  All right.
```

```
 1            THE COURT:  So let's do that.  You can just stay on
 2   the sidelines.  You don't have to do anything right now.
 3        Why don't you see where you go.  And if you're having a
 4   problem, either side can come in and we can talk about it.
 5            MR. SHAPIRO:  That's fine.  I can certainly make that
 6   effort, Your Honor.  And I'll draft those and share them with
 7   Ms. Critchfield.
 8            THE COURT:  Yeah.  Okay.
 9            MR. SHAPIRO:  I had one other motion.  And that had to
10   do with the protective order.
11            THE COURT:  Well, let me ask -- protective order here.
12            MR. SHAPIRO:  And if I could add one small point.
13   That protective order looks to me like the protective order
14   that people have designed in child pornography cases.
15            THE COURT:  You might have drafted it.
16            MR. SHAPIRO:  No, I didn't draft that.
17            THE COURT:  U.S. Attorney.
18            MR. SHAPIRO:  I didn't draft that one.
19        Here's the thing.  I am sensitive to the fact that I have
20   billed and will continue to bill the Court for my time in this
21   case.  It is a hassle to try to file things under seal, number
22   one; number two, to try to discuss things in a brief that are
23   under seal.
24        And the fact of Mr. Leung's first letter to me and its
25   content are important, I think, for the motion that I am going
```

1  to file.  And what I'm trying to do is be able to discuss the
2  issues in a comprehensible way that isn't going to involve a
3  redacted brief and an unredacted brief and a sealed portion.
4          **THE COURT:**  Well, but the government says that what
5  you want to discuss is -- not saying you can't discuss it.
6  They're saying what you want to discuss involves issues of the
7  administration of a program, I guess, designed at the highest
8  level to -- to protect witnesses whose lives are in danger, and
9  their families.  That, certainly, we all recognize is a
10 legitimate interest.
11     How well it's done is not the issue.  The issue is:  Does
12 it exist and is there a valid purpose?  And the answer, I
13 think, is yes.
14     I know we're paying for it, but I think -- I think you
15 have to honor the scope of the protective order unless it
16 prevents you -- if it necessitates filing a redacted version,
17 so forth and so on, I say, I'm sorry, do it.  I'll pay for it.
18     But if it involves some other aspect, like you need to
19 talk to X about this, or that's subject to a protective order
20 then, I mean, that happens all the time in investigations.
21     So then you have to talk to the government and see whether
22 they are willing to allow you to modify the protective order in
23 this case to do X, Y, or Z.
24     And my experience has been the government will say yes.
25 Because if they say no and they're unreasonable in that

```
 1  request, they come back here.  And that, again, I have to try
 2  to figure out why are they being unreasonable.
 3          MR. SHAPIRO:  Well, theoretically --
 4          THE COURT:  It's cumbersome.
 5          MR. SHAPIRO:  It's cumbersome.
 6      But, theoretically, I have two issues with it.  One is I
 7  may not want to tell the prosecutor what --
 8          THE COURT:  Well, this is a different issue, isn't it?
 9  I think you should tell them.  At this stage of the proceeding
10  I'm not so concerned about theories of work product and
11  approaches and so forth.
12          MR. SHAPIRO:  I have no issue with the government
13  saying that something, for example, that's in a witness
14  security program application ought to be subject to a
15  protective order.
16      What I do have a problem with is a letter that tells me
17  things that are in the records that Ms. Critchfield or the D.A.
18  produced already, without any kind of protective order, that
19  are in the public record from the trial.
20          THE COURT:  Then all you do is say to Mr. Leung, in a
21  letter, you say this ought not be subject to the protective
22  order and here are the reasons why; and if you have -- if you
23  object, then I'll bring it to the attention of the Court.
24          MR. SHAPIRO:  I have done that with respect to his
25  first letter.  I said there is nothing in that letter that
```

1  ought to be protected.  It is all public information.  These
2  are things that Mr. Raiton testified about.  And so why are we
3  sealing?  Why is this thing subject to a protective order?
4          **MR. LEUNG:**  Actually, Your Honor, Mr. Shapiro
5  categorically asserted that nothing in there was subject to the
6  protective order.
7      That is not my understanding.  The information that I put
8  in that letter were all from the --
9          **THE COURT:**  Well, I can send you guys to a magistrate.
10 Is that what you want to do?
11         **MR. SHAPIRO:**  Be happy to do that.
12         **THE COURT:**  Hammer through all this stuff.  Seems to
13 me there ought to be an easier way.
14         **MR. LEUNG:**  We agree, Your Honor.
15     If Mr. Shapiro has a specific request --
16         **THE COURT:**  Make your request specific.  As to a
17 particular document that you want to discuss, that you believe
18 is in the public domain, please identify, rather than wholesale
19 attacks on the protective order.
20     Okay.  Thank you.  That's that.
21         **MR. SHAPIRO:**  Okay.
22         **MR. LEUNG:**  Thank you, Your Honor.
23         **MS. CRITCHFIELD:**  Can I ask one more question, Your
24 Honor?
25         **THE COURT:**  Sure.

1    **MS. CRITCHFIELD:**  So in addition to waiting for the
2   interrogatories from Mr. Shapiro, should I also get a
3   declaration from the woman who --
4    **THE COURT:**  Yes.  That will be pretty easy, I think.
5    **MS. CRITCHFIELD:**  Okay.
6    **THE COURT:**  Here's this stuff (indicating).
7    **MR. SHAPIRO:**  Do you want us to submit an order with
8   respect to what you've ordered today, or is the Court --
9    **THE COURT:**  I don't think so.
10   **MR. SHAPIRO:**  Thank you, Your Honor.
11   **THE COURT:**  Too expensive.
12   **MS. CRITCHFIELD:**  Thank you, Your Honor.
13   **MR. LEUNG:**  Thank you, Your Honor.
14      (At 10:54 a.m. the proceedings were adjourned.)
15                           - - - -
16                    **CERTIFICATE OF REPORTER**
17      I certify that the foregoing is a correct transcript
18  from the record of proceedings in the above-entitled matter.
19
20  DATE:   Friday, May 16, 2014
21
22
23  _____
            Katherine Powell Sullivan, CSR #5812, RMR, CRR
24                   U.S. Court Reporter
25