BOERSCH SHAPIRO LLP
David W. Shapiro (State Bar No. 219265)
Dshapiro@boerschshapiro.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

Attorney for Petitioner
RONALD J. MCINTOSH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RONALD J. MCINTOSH,<br><br>     Petitioner,<br><br>     v.<br><br>ERIC H. HOLDER and ATTORNEY GENERAL OF CALIFORNIA,<br><br>     Respondents. | Case No. C 09-00750 CRB<br><br>**REPLY IN SUPPORT OF MOTION TO COMPEL STATE TO COMPLY WITH COURT ORDERED SUBPOENA** |

**INTRODUCTION**

In his motion, Ronald McIntosh explained that the Sheriff's Office produced virtually nothing – just a few transcripts of interviews of largely irrelevant witnesses – and asked the Court to order the State and its component agencies to take further steps to find out what happened to the investigative files relating to the Ewing homicide and document those steps in declarations of people with personal knowledge. He also asked for authorization to depose people with knowledge of the whereabouts of the missing files. The State opposes, but it fails to address the defects and omissions of the State's declarations that McIntosh pointed to in his motion. Its other arguments are meritless.

**ARGUMENT**

In its opposition, the State argues that (a) it has "certified" that it produced all of the Ewing homicide files, (b) there is no evidence that anything has been hidden, lost or destroyed, (c) McIntosh

is speculating when he quotes from the police and prosecutors' in-court statements about the number of witness interviews and their documentation, (d) the prosecutor's statement in closing argument about hundreds of interviews was just a "colloquialism"; and (e) if interview reports hadn't been produced at trial, then McIntosh's trial counsel would have said something. We address each below:

   1. McIntosh already pointed out how the declarations of Guidotti and Caprista are incomplete. Doc. 148 at 4-5. The State does not respond at all to the omissions we noted. At a minimum, the State should be ordered to confer with McIntosh's counsel to draft declarations that, when sworn to, would provide complete information about relevant documents and their disposition.

   2. There are *no* interview reports of any of the significant witnesses. If they never existed, then someone should swear to that fact. If they ever existed and now don't, then someone should swear to what happened to them. Those facts are relevant, for example, because if the State destroyed reports after McIntosh filed his original State habeas petition, then this Court would be justified in drawing an adverse inference based on the spoliation of evidence.

   3. The State's brief describes the evidence McIntosh submitted to support his claim that reports existed; it came from the mouths of State employees. McIntosh's assertions are hardly speculation.

   4. If there were not, in fact, hundreds of interviews, as the prosecutor claimed, then the prosecutor was exaggerating (or lying); he was not using a "colloquialism." In any event, the State's attempt to explain away the prosecutor's and police testimony is pure speculation; McIntosh provided *evidence* that those interview memos existed.

   5. McIntosh's trial counsel likely did not jump up and object when the prosecutor referred to hundreds of interviews and binders of evidence because there were, in fact, hundreds of interviews and much evidence. The question is whether there were memos documenting the many interviews that Singleton and Dirickson conducted and whether *all* of those memos were disclosed to McIntosh. For example, ADA Murray has already sworn that he sent the two officers to Southern California to interview Green; the officers cannot recall whether they conducted the interview or not. The question is whether they documented their visit in some way.

## CONCLUSION

Yet again, the State hunkers down and refuses to help McIntosh get at the truth. Its declarations and document retention may have been sloppy, or the State and its agencies may have made a calculated decision to destroy evidence. In either case, McIntosh is entitled to know whether the information he has sought for so long exists and, if not, what happened to it.

For these reasons, McIntosh requests that the Court sign the proposed order at Doc. 148-2, and, in addition, direct the State to engage in meaningful discussions to provide complete declarations from Guidotti and Caprista, or other relevant witnesses.

Dated: August 27, 2015

BOERSCH SHAPIRO LLP

*/s/David W. Shapiro*
David W. Shapiro

Attorney for Ronald J. McIntosh