IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD J. MCINTOSH, | No. C09-00750 CRB |
| Plaintiff, | **ORDER GRANTING MOTION TO STAY AND ABEY PROCEEDINGS** |
| v. | |
| ERIC H. HOLDER JR., et al., | |
| Defendant. | |

On April 7, 2017, the Court informed the parties that the alleged suppression of triggerman Drax Quartermain's history of mental illness is a stand-alone claim for relief under Brady v. Maryland, 373 U.S. 83 (1963), that remains unexhausted. Order (dkt. 241); see also, e.g., Soo Park v. Thompson, 851 F.3d 910, 919, 925 n.17 (9th Cir. 2017) (distinguishing Brady claims from other claims of prosecutorial malfeasance). It then gave McIntosh two options: (1) voluntarily dismiss this claim, which would allow the Court to rule on the rest of his Rule 60(b) motion, or (2) move to stay and abey these proceedings while he exhausts state-court remedies. Id. (citing Dixon v. Baker, 847 F.3d 714, 720 (9th Cir. 2017)). McIntosh has chosen the latter course.[1] See Mot. to Stay (dkt. 243).

---

[1] McIntosh also requested permission to use documents filed in connection with his Rule 60(b) motion in state court. See Mot. for Misc. Relief (dkt. 244). Insofar as he requires such permission, the Court GRANTS the request. Notwithstanding any state-law procedural barriers, he is also free to use as he sees fit new evidence that might support his claims that the government intimidated would-be alibi witness Jim Green, improperly coached prosecution witness Deborah Chandler, and covered up star witness David Younge's alleged perjury. See Cullen v. Pinholster, 570 U.S. 170, 206 (2013) (Breyer, J., concurring) (noting that a petitioner "can always return to state court presenting new evidence not previously presented").

To grant the motion to stay and abey these proceedings, the Court must first find that McIntosh had "good cause" for failing to exhaust his claim that the government suppressed information about Quartermain's history of mental illness. See Dixon, 847 F.3d at 720. Second, it must find that this claim is not "plainly meritless." Id. Third and finally, it must find that McIntosh has not engaged in abusive litigation tactics. Id.

**1.** As to the first step, McIntosh has great cause for not exhausting his claim regarding the suppression of Quartermain's history of mental illness: the government did not disclose it until this Court forced its hand.[2] See Gonzalez v. Wong, 667 F.3d 965, 979 (9th Cir. 2011).

**2.** As to the second step, Gonzalez v. Wong, 667 F.3d 965 (9th Cir. 2011), lights the way. Two decades before the Ninth Circuit heard his case, a California jury sentenced Jesse Gonzalez to die for the special circumstance killing of a police officer. Gonzalez, 667 F.3d at 971. Although there was no dispute that he pulled the trigger, the case hinged on whether Gonzalez knew in advance that the police were coming to arrest him on May 29, 1979. Id. at 973. That theory relied "almost entirely" on testimony from a jailhouse informant named William Acker. Id. Acker testified that Gonzalez had admitted knowing the police were coming and voiced a desire to "bag a cop." Id.

Unbeknownst to Gonzalez, the government had not disclosed that Acker "had a severe personality disorder, was mentally unstable, possibly schizophrenic, and had repeatedly lied and faked attempting suicide in order to obtain transfers to other facilities." Id. at 976. The Ninth Circuit held that this omission was a colorable Brady violation because "a reasonable state court could conclude that there was a reasonable probability" both that "the new evidence would have changed the way in which the jurors viewed Acker's testimony," and that "this change would have resulted in a different verdict." Id. at 982.

---

[2] The government maintains that there is insufficient evidence showing that Quartermain's history of mental illness was suppressed and that it was "discoverable" during trial. See Opp'n to R.60(b) Mot. at 13–14 & n.11. That will not work. The government does not dispute that it possessed this information. And, assuming it was indeed Brady material, the government would have had a disclosure obligation whether or not trial counsel requested it. The government has not come forward with any evidence suggesting that the information was in fact disclosed, and given the effort it took to obtain this information—as well as the importance of Quartermain's credibility to the verdict—the Court can only infer that his history of mental illness was not disclosed at trial.

2

This case has too much in common with Gonzalez to warrant a different outcome. McIntosh's conviction hinged in large part on out-of-court statements from Quartermain, who allegedly told David Younge (who then told the jury) that McIntosh had paid him to kill Ronald Ewing. Quartermain, like Acker, also had a history of schizophrenia, but that fact was not disclosed. What is more, Acker—unlike Quartermain—testified at trial. The jury in Gonzalez's trial therefore had the chance to observe Acker's demeanor, but the jury in McIntosh's trial had no chance to observe Quartermain's. Suppressing critical mental health information here might therefore have mattered all the more.[3]

**3.** As to the third step, McIntosh has argued all along that he has uncovered new evidence to support old claims. And here, unlike in Gonzalez, the state court denied McIntosh's petition on procedural grounds. Both of those facts gave McIntosh some reason to believe that this Court could hear his claims on the merits—now. See James v. Ryan, 733 F.3d 911, 914 (9th Cir. 2013). That McIntosh was ultimately mistaken does not imply that he has engaged in abusive litigation tactics. If anything, he has pushed for this litigation to be resolved as soon as possible.

\* \* \*

For the foregoing reasons, the Court GRANTS McIntosh's motion to stay and abey these proceedings while he exhausts state-court remedies.

**IT IS SO ORDERED.**

Dated: May 31, 2017

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[3] For this reason, the Court is not swayed by the fact that, in Gonzalez, the government also suppressed Acker's "history of lying and manipulative behavior," which could have called into question his stated motivation for testifying against Gonzalez. Id. at 983.

3